IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PERNELL STROMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-919-JLH-EGT |
| | ) | |
| C/O FIGAROA et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Pernell Stroman, an inmate at James T. Vaughn Correctional Center ("JTVCC"), filed this civil rights action against Defendants Figaroa, Howton, Whitsett, Tillman, Emig and certain John and Jane Does. (D.I. 3). Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 7). The Court proceeds to screen the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). For the reasons set forth below, the Court recommends that the Complaint be DISMISSED, with certain claims to be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Plaintiff is a practicing Muslim. (*See* D.I. 3 ¶ 12). On May 14, 2025, Plaintiff was moved into a new cell with another inmate. (*Id.* ¶ 10). Upon discovering that his cellmate was gay, Plaintiff informed Defendant Officer Figaroa that sharing a cell with a gay man violated Plaintiff's religious beliefs and asked to be moved to another available cell. (*Id.* ¶¶ 11-14). Figaroa refused to move Plaintiff. (*Id.* ¶ 14). Another Muslim inmate at JTVCC, Chad Goins,[1] learned about what happened and told Figaroa that this violated certain tenets of Islam, but Figaroa directed Goins and

---

[1] Chad Goins is a former plaintiff in this action. After Goins was released from prison (*see* D.I. 17), he was ordered to provide updated information to continue proceeding *in forma pauperis*. (D.I. 18). He failed to respond or pay the full filing fee, and he was dismissed from the case. (D.I. 19). The Court thus does not screen his claims.

Plaintiff to raise any religion-related issues with the chaplain. (*Id.* ¶¶ 4, 15-17). Plaintiff's cellmate was ultimately moved to a different cell. (*See id.* ¶ 23). Plaintiff was later given a new cellmate that he had never met, and that new cellmate apparently knew why Plaintiff's prior cellmate was moved (but did not inform Plaintiff). (*Id.* ¶ 24).[2]

At some point, Plaintiff learned that his new cellmate was also gay. (D.I. 3 ¶¶ 39-40). Plaintiff again discussed being moved with Figaroa, who told Plaintiff that he was not going to deal with it and that Plaintiff should "be a fucking man and deal with it" because he was in prison and "not a fucking day care or the middle east." (*Id.* ¶ 42).

Plaintiff alleges that, on June 1, 2025, he smoked something that caused him to black out in his cell – a reaction that he had never had to smoking before. (D.I. 3 ¶ 43). When he regained consciousness, "his pants were pulled down to his knees, and he knew he had been assaulted due to how he was feeling in the rectal area which was not normal and moist." (*Id.* ¶ 44). Plaintiff confronted his new cellmate and asked what he did to Plaintiff while Plaintiff was blacked out. (*Id.* ¶ 45). The cellmate apparently apologized and explained what happened, which the Court understands to be an alleged rape of Plaintiff by his cellmate. (*Id.* ¶ 46; *cf. id.* ¶ 54).

Irate, Plaintiff began to physically assault his cellmate. (D.I. 3 ¶ 47). Defendant Officer Whitsett arrived at Plaintiff's cell, called for help and ordered the inmates to separate. (*Id.* ¶ 48). Plaintiff initially complied, but he then grabbed the television and beat his cellmate with it. (*Id.* ¶ 49). Whitsett placed Plaintiff's cellmate in handcuffs and removed him from the cell. (*Id.* ¶ 50).

---

2 In the midst of Plaintiff's cellmate changes, Goins learned that another Muslim inmate was moved to segregated housing because he refused to be housed with a gay inmate. (D.I. 3 ¶¶ 35-36). Goins thereafter filed grievances based on Muslim inmates being forced to share cells with gay inmates – in violation of their beliefs – and being punished for refusing to share their cells. (*Id.* ¶ 37).

Defendant Officer Howton placed Plaintiff in handcuffs and moved him to another building at Defendant Officer Tillman's direction with Defendant Warden Emig's approval. (*Id.* ¶¶ 51, 60).

Once Plaintiff was in the new building, a lieutenant summoned an unidentified staff member who was specifically trained on the Prison Rape Elimination Act ("PREA"). (D.I. 3 ¶ 52). The PREA staffer collected Plaintiff's clothing, and Plaintiff was transported to the hospital, where a rape kit was collected. (*Id.* ¶¶ 53-54). Plaintiff returned to JTVCC and was held in the infirmary for observation. (*Id.* ¶ 55). Upon his return, Plaintiff received a write-up for physically assaulting his cellmate and was moved to segregated housing. (*Id.* ¶ 55). Following the alleged rape, Plaintiff became depressed and suicidal. (*Id.* ¶ 56). While Plaintiff was in segregated housing, Goins frequently visited Plaintiff; eventually, during one visit, Plaintiff told Goins what had happened. (*Id.* ¶¶ 57-58). Goins requested to speak with unidentified PREA-trained staffers about the event and Figaroa's refusal to move Plaintiff, but the staffers ignored Goins's request. (*Id.* ¶ 59). Other officials have also allegedly refused to do anything. (*Id.* ¶ 61). Plaintiff currently remains in segregated housing. (*Id.* ¶ 60).

On July 22, 2025, Plaintiff filed this action against Defendants, asserting violations of the Eighth Amendment for failing to protect Plaintiff and of the First Amendment for interfering with Plaintiff's religious free-exercise rights under 42 U.S.C. § 1983, as well as a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and state law claims for assault, battery and negligence. (D.I. 3 at 1-2; *id.* ¶¶ 5-8). Plaintiff seeks a declaratory judgment that his rights were violated; injunctive relief ordering Warden Emig to have Plaintiff treated, released from segregated housing, and expunge his disciplinary record; $5,000,000 in compensatory damages; and $5,000,000 in punitive damages. (*See* D.I. 3 at 16-18). Plaintiff sues Defendants in both their individual and official capacities.

## II. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (quotation marks omitted); see also 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (civil actions filed by prisoners seeking redress from governmental entities or government officers and employees). The Court must accept all factual allegations in a complaint as true and view them in the light most favorable to a *pro se* plaintiff. See *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). Rather, a claim is deemed frivolous only where it relies on an "'indisputably meritless legal theory' or a 'clearly baseless' or 'fantastic or delusional' factual scenario.'" *Id.*

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, however, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" entitlement to relief. *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

### A. Plaintiff's Claims Under RLUIPA

Plaintiff asserts a claim under RLUIPA against Defendants Figaroa, Tillman and Emig. (*See* D.I. 3 ¶ 66). In particular, Plaintiff seeks a declaration that his rights under RLUIPA were violated. (*Id.* at 16 ¶ A.4). But declaratory relief cannot be used to redress a wrong that has already happened. *See Parkell v. Senato*, 704 F. App'x 122, 125 (3d Cir. 2017). And Plaintiff does not appear to seek any form of injunctive relief based on the alleged violation of his free exercise rights. (*See* D.I. 3 at 17 ¶ B). Because Plaintiff's RLUIPA claim does not seek any cognizable

form of declaratory or injunctive relief, the Court recommends Plaintiff's RLUIPA claim be dismissed. *See Senato*, 704 F. App'x at 125 (RLUIPA limited to declaratory and injunctive relief).

**B. Plaintiff's Claims Under the First Amendment**

Plaintiff also alleges that Defendants violated Plaintiff's First Amendment rights by housing him with a gay inmate. (*See* D.I. 3 ¶¶ 64, 66 & 68). Starting with Figaroa, he allegedly violated Plaintiff's free exercise rights by forcing Plaintiff to share a cell with a gay inmate. (*See id.* ¶ 66). Even if true, courts have repeatedly found that the First Amendment does not provide a sentenced inmate with the right to choose a cellmate. *See, e.g.*, *Evans v. LaRose*, No. 4:19-1567, 2019 WL 5684458, at *4 (N.D. Ohio Oct. 31, 2019) (collecting cases); *see also Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011). And this principle has been extended to situations where an inmate claims that being housed with a gay inmate violates their religion.[3] *See, e.g.*, *McKnight v. MTC*, No. 3:15-1647-K-BK, 2015 WL 7730995, at *3 (N.D. Tex. Nov. 9, 2015) ("Plaintiff's allegations concerning the assignment of a homosexual cellmate lack any arguable basis under the Free Exercise Clause of the First Amendment."). Figaroa's refusal to move Plaintiff to a different cell is thus not actionable under the First Amendment. (D.I. 3 ¶¶ 13-14, 41-42). As to Tillman and Emig, Plaintiff alleges that they knew Muslim inmates were punished for refusing to share their cells with gay inmates. (*Id.* ¶ 68). But Plaintiff never alleges that he specifically was disciplined for refusing to share a cell with a gay inmate; even if Plaintiff had alleged that, such discipline would not violate Plaintiff's free exercise rights. And finally, Plaintiff never articulates

[3] Plaintiff does not allege that he was deliberately assigned gay cellmates so as to harass him in violation of a policy. *See McKnight*, 2015 WL 7730995, at *3 (citing *Jehovah v. Clarke*, 798 F.3d 169, 181 (4th Cir. 2015)). Rather, Plaintiff challenges the cellmate assignments themselves as violating his free exercise rights. (*See, e.g.*, D.I. 3 ¶ 66 ("The actions of . . . Emig forcing Plaintiff Stroman . . . . to be cellmates with homosexuals . . . interfer[es] with the free exercise of religion protected by the First Amendment . . . .")).

how Defendants Whitsett and Howton personally violated Plaintiff's free exercise rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). The Court thus recommends that Plaintiff's First Amendment claims be dismissed.

**C. Plaintiff's Claim under the Eighth Amendment**

Next is Plaintiff's failure to protect claim under the Eighth Amendment. (*See* D.I. 3 ¶ 64). "To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012); *see also Farmer v. Brennan*, 511 U.S. 825, 834 & 837 (1994).

Here, Plaintiff does not allege that his cellmate posed a substantial risk of harm to him or that Defendants were aware of such a risk. Nor does Plaintiff allege that inmate rape was frequent and uncontrolled at JTVCC such that the risk of harm was obvious. *See Farmer*, 511 U.S. at 843-44. Plaintiff only alleges that Defendants and other prison officials were aware that Plaintiff's cellmate was gay. (*See* D.I. 3 ¶¶ 40-42). But merely housing Plaintiff with a gay inmate did not put Defendants on notice that Plaintiff was at substantial risk of harm. *See Westhook v. Bailey*, No. DLB-25-602, 2026 WL 1279114, at *3 (D. Md. May 11, 2026). More is required to establish that Defendants knew Plaintiff was at a substantial risk of harm – such as if Defendants were aware that Plaintiff's cellmate had previously raped other inmates, *see Pryor v. Harper*, No. 19-1387, 2021 WL 37628, at *4-5 (W.D. Pa. Jan. 5, 2021), or that Plaintiff informed Defendants of threats made by his cellmate, *see Jones v. Carroll*, 628 F. Supp. 2d 551, 559 (D. Del. 2009).

Although Plaintiff alleges disturbing actions by his cellmate, not "every injury suffered by one prisoner at the hands of another . . . translate[s] into constitutional liability for prison officials

responsible for the victim's safety." *Farmer*, 511 U.S. at 834; *see also Strain ex rel. Shaw v. Strackhouse*, 920 F.2d 1135, 1143 (3d Cir. 1990) ("The right to protection is not activated by an isolated mishap." (cleaned up)). Plaintiff has not plausibly alleged that Defendants were subjectively aware of a risk of harm to Plaintiff. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). The Court thus recommends Plaintiff's failure to protect claim under the Eighth Amendment be dismissed.

**D. Plaintiff's PREA Claims**

Plaintiff also attempts to assert a claim that the John and Jane Doe Defendants violated PREA in connection with the complained-of events. (D.I. 3 ¶ 65). But PREA does not provide a private right of action. *See, e.g.*, *McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014). The Court recommends that Plaintiff's PREA claim be dismissed and with prejudice.

**E. Plaintiff's State Law Claims**

Lastly, Plaintiff asserts state law claims for assault, battery and negligence. (*See* D.I. 3 ¶¶ 64-65 & 67-68). But there are no facts alleged suggesting that any of the Defendants contacted Plaintiff or that Defendants put Plaintiff in fear of such contact. *See Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995) (battery); *Jagger v. Schiavello*, 93 A.3d 656, 660 n.12 (Del. Super Ct. 2014) (assault). And Plaintiff's negligence claim fails for the same reason as his failure to protect claim – there are no allegations that suggest Plaintiff's injury was foreseeable. *See Delmarva Power & Light Co. v. Burrows*, 435 A.2d 716, 718 (Del. 1981). Accordingly, the Court recommends that Plaintiff's state law claims be dismissed.

* * *

Plaintiff has failed to state a claim under RLUIPA, the First Amendment, the Eighth Amendment and PREA, and he has failed to state a claim of assault, battery or negligence under

state law. Because this is a civil rights case, leave to amend will be granted. *See Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017). But because PREA does not provide a private right of action, amendment with respect to that claim is futile.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Complaint (D.I. 3) be DISMISSED. Specifically, the Court recommends that Plaintiff's PREA claim against the Doe Defendants be DISMISSED WITH PREJUDICE and all other claims be DISMISSED WITHOUT PREJUDICE. The Court further recommends that Plaintiff be given thirty (30) days from the date this Report and Recommendation is adopted to file an amended pleading.

Plaintiff may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2); *see also* FED. R. CIV. P. 6(d). Objections are limited to five (5) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: September 9, 2026

UNITED STATES MAGISTRATE JUDGE